UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Stephen Toomey,

                Plaintiff,

v.

TruGreen ChemLawn and
Robert Augusta,

                Defendants.

**Civil Action No.:  05-CV-12172**

**AFFIDAVIT OF DENISE FORBES**

NOW COMES Denise Forbes, first duly sworn, and states and deposes as follows:

1.      I am Denise Forbes, an individual of majority age who is competent to testify to the statements made in this affidavit. I have been employed by TRUGREEN LIMITED PARTNERSHIP (incorrectly named as TruGreen ChemLawn) ("TruGreen") since May 1, 2001, in the position of Regional Human Resources Manager.  My region includes TruGreen's facility located at 94 Flagship Drive, North Andover, Essex County, Massachusetts commonly referred to as "Boston North."

2.      I make this affidavit based on my own personal knowledge and the business records of TruGreen. The business records of TruGreen are made at or near the time of the act, transaction or event set forth in the record by, or from information transmitted by, a person with knowledge. It is the regular practice of TruGreen to make such records, which records are kept in the course of its regularly conducted business.

3.      TruGreen is in the business of selling lawn care and landscaping products and services.  Product and service sales are accomplished in large part through telemarketing solicitation by sales representatives.

4.      TruGreen's business is seasonal, typically starting the first week in January and typically ending mid to late November, depending on weather conditions. At the end of the season, sales representatives are laid-off.

5.      TruGreen hired Stephen Toomey ("Mr. Toomey") on February 23, 2004, to work at Boston North in the position of a Sales Representative, with a focus on residential sales to be accomplished through telemarketing ("RSR").

6.       The immediate supervisor of the sales representatives is the sales or marketing manager.  The Sales Manager at Boston North when Mr. Toomey started his employment was Len Vinning, who left his employment with the Company in May 2004.

7.      On May 24, 2004, TruGreen filled the Sales Manager position with Robert Augusta, a long time employee of TruGreen and a fellow RSR at the Boston North facility.

8.      Derek Suech was the Branch Manager of the Boston North facility during Mr. Toomey's employment.

9.      The daily work hours of sales representatives are typically from noon to 9: 00 P.M.  Sales representatives are paid a weekly salary, over-time, if applicable, plus commissions on sales accomplished by the sales representative.  The primary function of the RSR position is telemarketing.

10.     TruGreen invests significant time, resources and funds generating information regarding leads, commonly referred to as "material."  The material may consist of potential customer lists purchased by TruGreen, new home owner prospect lists developed through research by TruGreen or former customer lists.  Additionally, TruGreen conducts direct mail campaigns that generate potential customer inquiries through the return of cards seeking further service and/or product information.  With respect to all material, TruGreen must first screen all leads to determine whether any potential customers are registered on the no-call list, recently instituted and now required by law.  The material ultimately provided to Sales Representatives consists of a narrowed and screened customer prospect base for telemarketing solicitation.

11.     Between January and March, again depending on weather conditions, the RSR performs telemarketing solicitation the entire work day from material generated by TruGreen.

12.      When the snow clears from the ground, the RSR works in the field between the hours of noon and 3:00 p.m. to generate new material. The target number of field leads each day is thirty (30). The field function of the job includes the preparation of a service estimate for a particular customer prospect, after actually viewing the customer's property. The RSR then leaves the estimate at the customer's door or on their porch.  It is the law, as well as Company policy, that service estimates may not be placed in the mailbox of the potential customer. On the list of the RSR's evening calls are the targeted 30 contacts made in the field by the RSR earlier that day.

13.     The primary function of the Sales Representative position is telemarketing and virtually all telephone calls made by a Sales Representative are "cold" calls through use of an automated dialer system or a regular telephone.  Traditionally, the best calling hours are between 4:00 P.M. and 9:00 P.M. and sales representatives are required to be in the office, making calls during these hours.

14.     The RSR job is repetitive, calls may result in hang-ups, and there may be multiple calls before a sales prospect is contacted or an actual sale accomplished.  The job requires a positive attitude, the ability to move past unsuccessful calls and good verbal skills while talking to prospective customers on the telephone.  It is a job requirement and Company policy that all contact with customers or prospective customers be polite.

15.     TruGreen provides a structured opportunity for an employee to improve unacceptable performance or conduct through its policy of progressive discipline.  *A true and correct copy of §7.1(Progressive Disciple) of the Employee Handbook is attached hereto at Exhibit "A."*

16.     Mr. Toomey received formal warnings during his employment. On July 22, 2004, Mr. Toomey received a written first warning for misuse of his gas card. *A true and correct copy of the July 22, 2004 written first warning is attached hereto as Exhibit "B."*  A Company gas card is to be used solely in connection with Company business and not personal use.

17.     Mr. Toomey also received a written third and final written warning on October 25, 2004, resulting from a customer complaint of that same date for rudeness by

Mr. Toomey toward the customer over the phone. ***A true and correct copy of the October 25, 2004 written third and final warning is attached hereto as Exhibit "C."***

18.     In some circumstances an employee's conduct warrants immediate termination, without prior warnings and/or regional approval. Examples include, but are not limited to willful disregard of supervisor's instructions. ***See Exhibit "A" attached hereto*** Progressive Discipline Policy at §7.1 c.

19.     Several weeks after Mr. Toomey's third and final written warning, Mr. Toomey was subject to a seasonal lay off, which lasted during the period November 18, 2004 and January 2, 2005.

20.     Mr. Toomey was called back to work on January 3, 2005.  His employment terminated on February 25, 2005.

21.     TruGreen is an equal opportunity employer with policies and procedures in place to prevent and, if a complaint is made, to correct promptly any harassing or discriminatory behavior. ***A true and correct copy of §2.1 (Equal Employment Opportunity) of the Employee Handbook is attached hereto as Exhibit "D").*** TruGreen's policies include, without limitation, a written policy explaining that sexual harassment is illegal.  The sexual harassment policy is set forth  in §4.4 of the Employee Handbook. ***A true and correct copy of §4.4 (Sexual Harassment) of the Employee Handbook is attached hereto as Exhibit "E."*** In addition to the Handbook, notices are posted at the Boston North facility on the bulletin boards. ***A true and correct copy of TruGreen's Equal Opportunity Statement and Policies posted at Boston North is attached hereto as Exhibit "F."***  A complaint procedure is in place and no employee is

permitted to take retaliatory action against another employee for filing a complaint, including a sexual harassment complaint.

22.     It is part of my job responsibilities as the Regional Human Resources Manager to respond to Boston North employee complaints received by TruGreen.

23.     At no time during Mr. Toomey's employment did TruGreen receive a complaint from Mr. Toomey of sexual harassment or any of the alleged discriminatory acts for which Mr. Toomey now seeks to complain.

24.     On March 17, 2005, an anonymous call was received on the Company's 800-alert line telephone number.  The caller described an alleged situation involving Augusta and a specific female employee and otherwise made general statements about female employees.  I investigated the anonymous complaint on March 21, 2005. None of the allegations were substantiated and the specifically named female employee expressly denied the allegations made.

25.     On March 30, 2005, Toomey brought an administrative charge before the Massachusetts Commission Against Discrimination ("MCAD").  A true and correct copy of Toomey's MCAD charge is attached hereto as Exhibit "G."

Dated: December 15, 2006                    /s/ Denise Forbes
                                       Denise Forbes

COMMONWEALTH OF MASSACHUSETTS
PROVIDENCE, ss.                                    December 15, 2006

      Then personally appeared the above-named Denise Forbes and made oath that the foregoing is based on her own personal knowledge and business records of Defendant TruGreen Chemlawn *(sic)* and is true and correct.

                        Before me,

                        _/s/ Maryellen Volpicelli_____
                        Notary Public
                        My Commission Expires:  10/2/2010

G:\DOCS\ServiceMaster\Toomey\Federal Court Pleadings\Affidavit of Denise Forbes.doc